Filed 12/18/23  In re Theo T. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re Theo T., et al., Persons Coming Under the Juvenile Court Law. | B327644 |
| _____ LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | Los Angeles County Super. Ct. No. 22CCJP00270CD |
|      Plaintiff and Respondent, | |
|      v. | |
| R. T., | |
|      Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Charles Q. Clay III, Judge.  Conditionally affirmed and remanded.

Jesse McGowan, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, and Kim Nemoy, Assistant County Counsel, for Plaintiff and Respondent.

_____

Mother Ruby T. appeals the juvenile court's minute order after a status review hearing finding that the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (the Act) and the corresponding state code sections do not apply to her son T.T. and daughter S.W.  The Los Angeles County Department of Family and Child Services failed to comply with the requirements of the Act.  We conditionally affirm the order and remand to allow the Department and juvenile court to comply with the Act and related California law.  Code citations are to the Welfare and Institutions Code.

The juvenile court detained the mother's four children from her and their respective fathers.  The mother submitted to the court a form stating she might have Cherokee ancestry through the maternal grandfather and Blackfoot ancestry through her maternal grandmother and maternal great-grandmother.  She provided the name and possible year of birth for the maternal great grandmother.  The juvenile court ordered the Department to investigate these claims of Native American ancestry.

When the social worker contacted the mother, she refused to provide further information about her relatives, stating the questions were an invasion of her privacy.  The Department did not ask other relatives with whom it was in contact about Native American ancestry.

T.T.'s father and S.W.'s father both stated they had no Native American ancestry.

The Department sent notices to the Blackfeet and Cherokee tribes.  The notices identified the children, the mother, the

2

maternal grandparents, and maternal great-grandmother. The notices did not list the places of birth for the fathers or either of the mother's parents. The notices did not include any information about either of the fathers' parents or the names of any other known relatives.

The juvenile court exercised jurisdiction over the children and found the Act did not apply at the disposition hearing. The mother appealed the disposition ruling, arguing the Department and juvenile court had not complied with the Act, in appellate case number B319395. While that case was pending, the juvenile court ordered the Department to interview or attempt to interview all extended family members about possible Native American ancestry. The Department moved to dismiss the mother's appeal based on this order. We granted the motion.

The Department spoke to a maternal cousin and two maternal aunts. These relatives reported that the maternal great-grandmother had Blackfoot ancestry in North Carolina and provided her name and date of birth, as well as the name and date of birth of the maternal grandmother. The Department also spoke to S.W.'s paternal grandmother who reported the paternal great-great-great-grandmother had said the paternal great-great-great-great-grandfather was Cherokee, but she did not know his name or date of birth. T.T.'s paternal grandmother reported the family had no Native American ancestry.

The Department reported this information to the juvenile court in a last minute information before a February 15, 2023 status review hearing. At the hearing, the juvenile court found, based on that information, that the Act did not apply. The juvenile court also continued the children's removal from the mother and terminated the mother's reunification services. The

mother appeals the court's order, arguing the Department and the juvenile court again failed to comply with the Act.

The mother correctly argues the Department failed to comply with the Act because it did not include the name and date of birth of maternal great-grandmother in its notice to the Blackfeet tribe. We remand for the Department to do so.

The Act requires the Department to ask the parents and extended family members about possible Native American ancestry. (§ 224.2, subds. (a) & (b).) Where the initial inquiry leads to a reason to believe a child is an Indian child, the Department must make further inquiry. (§ 224.2, subd. (e).) If the further inquiry leads to a reason to know a child is an Indian child, the Act requires formal notice to tribes. (§ 224.2, subd. (f).)

It triggers the Department's duty to make a further inquiry when the initial inquiry results in information suggesting a parent or the child is a member or may be eligible for membership in an Indian tribe. (§ 224.2, subd. (e).) The Department then must communicate with three main groups: the family, government agencies, and tribes. (§ 224.2, subd. (e).)

The Department must interview the parents and extended family members to obtain as much of the following information as possible: the child's name, birthdate, and birthplace; the name of the tribe in which the child is a member or may be eligible for membership; the names, addresses, and dates and places of birth and death of the child's biological parents, grandparents, and great-grandparents; and "tribal enrollment information of other direct lineal ancestors of the child, and any other identifying information . . . ." (§ 224.3, subd. (a)(5).) The Department must contact any identified tribe in which the child may be a member

4

or eligible for membership and share information that the tribe says is necessary to make a membership or eligibility determination, as well as information on the current status of the child and the case.  (§ 224.2, subd. (e).)

Here, the mother's statements that she may have Cherokee ancestry through her maternal grandfather and Blackfoot ancestry through her maternal great-grandmother and grandmother gave the Department reason to believe the children may be eligible for tribal membership.  Thus, the Act required the Department to inquire of available extended family members for further information.  (§ 224.2, subd. (e).)  The Department did so and obtained additional relevant information.  However, when the Department made its further inquiry of the tribes, it did not provide all of this relevant information.  Specifically, it did not provide the name and date of birth of a direct, lineal ancestor who was reportedly a member of the Blackfoot tribe.  The Act required the Department to provide this information, and this omission rendered its further inquiry insufficient.

The Department argues its duty of further inquiry was never triggered both because the great-great-grandmother was too distantly related, and the Blackfoot tribe is not federally registered.   These arguments err.

The Department claims information regarding the great-great-grandmother was too remote to trigger a duty of further inquiry.  Without information foreclosing a claim of tribal membership based on such familial association, however, the Department's claim is meritless.  (*In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1386-1387 [information about great-great-great-grandparents suggested possible tribal membership where no information provided that such familial association could not

5

lead to membership].) Information about a direct, lineal ancestor with tribal heritage gives the Department reason to believe the child may be an Indian child.

The Black*feet* tribe is federally registered. (*In re L.S.* (2014) 230 Cal.App.4th 1183, 1198.) The Black*foot* tribe is a Canadian tribe and is not federally registered. (*Ibid*.) However, the two tribes are understandably frequently confused. (*Ibid*.) Where a parent or relative claims Blackfoot heritage, the Department should clarify whether Blackfoot or Blackfeet is meant. (*Ibid*.) The Department here admirably initially sent notice to the Blackfeet tribe, presumably out of an abundance of caution. The Department now attempts to avoid a finding that its further inquiry was insufficient by emphasizing that Blackfoot, not Blackfeet, heritage was claimed. If the Department chose not to confirm which was meant, it cannot use its failure to evade its duty of further inquiry. Here, where the Department did not seek to clarify and the information suggested the tribe meant was in the United States, we will not find the duty of further inquiry was not triggered. (*In re S.R.* (2021) 64 Cal.App.5th 303, 315 ["information that is far less conclusive than what would trigger formal notice may trigger the obligation to conduct further inquiry"].)

The Department next argues that if its duty of further inquiry was triggered, it met its statutory obligations. This contention is incorrect.

The Department claims that, because the mother's information triggered only a duty of further inquiry and not the duty for formal notice, any deficiencies in the notices are legally irrelevant. While the Department is right that the requirements for informal notice to the tribes are not the same as those for

6

formal notice, it failed to meet the requirements for informal notice.  (§ 224.2, subd. (e).)  The Department must provide the tribe any information the tribe needs to determine if the child is eligible for membership.  (§ 224.2, subd. (e).)  The Department does not explain why information about the ancestor who was reportedly a member in the tribe would not fall into this category.  Here, the Department omitted relevant information in its possession that the law required it to include.  (*In re E.H.* (2018) 26 Cal.App.5th 1058, 1069 [information regarding great-great grandparents must be provided if it may be relevant in establishing whether the child may be an Indian child].)  Thus, the Department's notice was deficient.  As noted, we reject the Department's argument that the maternal great-grandmother's information was irrelevant because relatives stated she had Blackfoot rather than Blackfeet ancestry.

The Department erroneously argues that any challenge to its failure to meet its duty of further inquiry has been forfeited because the mother did not object in the juvenile court.  (*In re A.G.* (2012) 204 Cal.App.4th 1390, 1400 [parents' failure to object to ICWA finding does not preclude appeal because it is the tribes' interest that is at stake].)

## DISPOSITION

We conditionally affirm the juvenile court's order and remand the matter to the juvenile court with directions to comply with the further inquiry provisions of Welfare and Institutions Code section 224.2.  The juvenile court shall order that, within 30 days of the remittitur, the Department send informal notice to the tribes containing all relevant information in its possession.  In the event the further inquiry leads to reason to know T.T. and S.W. are Indian children, the juvenile court and Department

7

shall proceed accordingly under the Act and related California law.  In the event the further inquiry does not lead to reason to know T.T. and S.W. are Indian children, the juvenile court's order shall remain in effect.


WILEY, J.

We concur:


GRIMES, Acting P. J.


VIRAMONTES, J.